February 20, 1911.

—————————O———————————

5205.

(Court of Appeal, Parish of Orleans.)

## PHILIP QUAGLINO vs. MRS. MARGARET CURREN.

1. There can be no sale "per aversionem" when the dimensions of the land sold are clearly stated in the deed and no adjoining tenements or fixed boundaries are mentioned.

2. The prescription of ten years avails a possessor only in so far as his possession accords with his deed. What is not covered by his deed is possessed not *under* the deed but beyond it, and can be acquired only by the prescription of thirty years.

3. A servitude of passage means the right to pass over one estate in order to reach another. Mere occupancy of a strip of land adjoining an estate and use thereof as a place to keep cattle, horses and vehicles, do not constitute an apparent servitude of passage.

Appeal from the Civil District Court, Division "D."

Marinoni and Hornor, for plaintiff and appellee.

Dart, Kernan and Dart, for defendant and appellant.

ST. PAUL, J.—This is a petitory action out of the following state of facts; The late Daniel O'Reagan acquired in 1880 a lot of ground measuring 63', 11", 3"' on Rousseau Street by 159 feet in depth and front on Josephine Street.

After his death his executor sold to defendant in 1890 the portion of ground designated by the letter "B" on the sketch hereto annexed, measuring 31 feet front on Rousseau Street by 110 feet in depth. The rest of the property passed to his minor heirs.

In 1897 the tutrix of the minors sold to defendant at public sale "the rear 39 feet more or less" of said lot, the deed declaring that it was the intention of the vendor to take 39 feet from the original depth of 159 feet and leave a depth of 120 feet. This portion is shown on the sketch by the letter "C."

In 1900 the minors, then emancipated, sold to Antoine Messina a portion forming the corner and measuring 32' 10" 4"' on Rousseau Street by 120 feet in depth and front on Josephine Street. This same portion was sold by Messina to plaintiff and covers the portions designated on the sketch by the letters "A" and "E."

On the same day the aforesaid heirs of Daniel O'Reagan sold to plaintiff a portion of ground in the rear of lot "B," measuring 10 feet and shown on the sketch by the letter "D."

From the foregoing it will be seen that plaintiff holds deeds to the three portions designated by the letters "A," "E" and "D," and that defendant holds deeds to the two portions designated by the letters "B' and "C."

Plaintiff prays to be put in possession of the portions designated as "D" and "E," now in the possession of defendant; and from a judgment in his favor defendant appeals.

Defendant shows that at the time she purchased "the rear 39 feet more or less" of the original lot and went into possession thereof, the visual boundary thereof was established at a point 110 feet from Rousseau Street and was formed by the back of a building standing on lot "A" and the rear fence of lot "B."

To this circumstance she appeals as constituting a sale "per aversionem" of the whole land up to the visual boundary aforesaid.

But her contention is not well founded. Her deed mentions no boundaries or adjoining tenements, but on the contrary very clearly recites that the vendor conveys to her 39 feet and reserves 120 feet from the depth of the front lot.

And there can be no sale "per aversionem" where the dimensions of the land sold are clearly stated in the deed, and no adjoining tenements or fixed boundaries are mentioned.

See **J. D. Minor vs. J. T. Daspit,** decided by Supreme Court February 13, 1911.

Had defendant shown a situation such that to deprive her of the possession of this strip of land would be to deprive her of the means of ingress and egress to and from her premises this case might then perhaps have some semblance to **Kane vs. Hackett, 7 Court of Appeal 497,** which is otherwise inapplicable. But from our reading of the record defendant will suffer no injury on that score.

Nor will the prescription of ten years avail defendant. That prescription avails a possessor only insofar as his possession accords with his deed. What is not

covered by his deed is possessed not **under** the deed, but beyond it, and can be acquired only by the prescription of thirty years.

Nor can defendant claim a servitude of passage over the strip of ground by virtue of any of the circumstances on which she relies. Such a servitude is "discontinuous" and therefore cannot be acquired by prescription (Civil Code 727, 766), and we find nothing whatever in this record to warrant the assumption that O'Reagan ever intended to set aside this portion of ground as a driveway or passage of any kind. During his time it was used by his father only as a place to keep milch cows. It was not until after his death and during the minority of his heirs that it first appears to have been used as a place for a horse and wagon. This established no servitude. (Civil Code 731.)

Nor do we think that there existed any apparent sign of servitude when defendant bought. We are not prepared to admit that the mere presence of a wagon gate giving upon an unpaved strip of land evidences the existence of a servitude upon that land in favor of an adjoining estate, even though used as a driveway by the occupants of that estate.

Moreover to constitute an apparent sign of servitude between two estates, there must first appear to be two separate estates, one of which owes servitude to the other, but such is not the case here; the whole appeared to be one single estate and no question of servitude could therefore arise.

Finally a servitude of passage, means a right to pass over one estate in order to reach another; and the evidence shows that this strip of land was never at any time used for any such purpose; it was simply occupied and used as a place in which to keep cows and afterwards a horse and wagon. It was never used as a

passage way for a horse and wagon going to and coming from any other part of the premises. This occupancy had in it nothing resembling a servitude of passage and could not constitute an apparent sign of such servitude.

We, therefore, think that the judgment appealed from is correct, and accordingly it is affirmed.

February 20, 1911.

Godchaux, J.—takes no part.

Rehearing refused, March 20, 1911.